IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VENTURA CONTENT, LTD. | CIVIL ACTION |
| Plaintiff, | FILE NO. _____ |
| v. | |
| UGC INTERNET VENTURES LTD. and DOES 1-10, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| Defendants. | |

Ventura Content, Ltd. ("Ventura") by and for its Complaint against

Defendant UGC Internet Ventures Ltd. and Does 1-10 (collectively "Defendants")

avers as follows:

## **INTRODUCTION**

1.     Advances in digital technology have caused a profound change in the

way that consumers access copyrighted entertainment content.  With the

widespread adoption of high-speed Internet connections and the ever decreasing

cost of computer technology, copyrighted works can be copied, performed, and

virally distributed nearly instantaneously over the Internet.

2.     Entertainment companies, such as Ventura, collectively invest billions

of dollars each year in producing, distributing, and promoting entertainment

996832.1

content to consumers, relying upon copyright laws to protect their investments. Many businesses respect the investments that entertainment companies make in their products and procure licenses when they engage in the online sale or distribution of copyrighted works.   Others, like Defendants, intentionally misappropriate valuable entertainment content for their short-term profit.

3.      On-line piracy has been a uniquely powerful threat to the adult entertainment industry, which relies heavily on the Internet as a means to distribute its content to consumers.  Entire movies can now be copied and distributed online at no additional cost by anyone with a computer and an Internet connection.  As a result, online copyright piracy has had a devastating impact on the adult entertainment industry.  Legitimate companies such as Ventura devote substantial resources to develop and produce high quality, professionally made adult videos in conformity with the record keeping and labeling requirements imposed under Federal Law.  Using the anonymity and power of the Internet, Defendants and others like them steal this content on a massive scale for their own benefit by operating websites known as "Tube Sites" that allow users to upload, view, and obtain copies of a vast library of infringing adult video content for free.

4.      The emergence of these Tube Sites operated by Defendants and others threatens not just Ventura, but the entire adult entertainment industry.  *See, e.g.*, C. Brian Smith, *Porn Panic!*, Advocate.com, Apr. 6, 2009 (reporting that "many

[websites] tacitly permit users to upload copyrighted content" and "many producers are resigned to the reality" that copyright infringement is inevitable on tube sites).

5.     Tube Sites maintain the fiction that they offer a forum for users to upload and share their own original "user-generated" adult video content; however, in reality, they function as repositories for large collections of copyrighted, professionally made adult videos, including works belonging to Ventura.  The sites operated by Defendants, accessible at the websites www.pornbanana.com and www.shufuni.com (hereinafter the "Accused Sites"), are no different.  Like most Tube Sites, the Accused Sites contain a prominent link for users to "Upload Video[s]," but the vast majority of videos contained on the sites are not "user-generated," but rather comprised of professionally made, copyrighted content.

6.     The cornerstone of the Defendants' business plan is their ability to offer their users access to free, copyrighted adult videos as a means to attract users to their sites.  The Accused Sites are extremely popular, generating a substantial volume of unique views each month.  Defendants use this traffic to generate money for themselves and their related businesses by selling advertising space, offering "rewards" programs and various third-party services.  Defendants have amassed substantial profits by appropriating the value of content they do not own on a massive scale without payment to, or any permission from, the copyright

owners.

7.    Defendants openly promote and enable infringement of adult entertainment content by users of the Accused Sites.  For example, Defendants provide users with the ability to search for videos of "pornstars," *i.e.,* professional actors who appear in studio-produced videos.  Moreover, Defendants openly encourage users to "Watch Free Porn Videos of Famous Pornstars" and seek to attract users to their sites by inviting them to "Enjoy tons of free porn videos uploaded daily."

8.    Defendants are not only enabling massive infringement by their users, they knowingly distribute, display, and publicly perform the copyrighted works uploaded to the Accused Sites.  Defendants host copies of the infringing videos on servers they control, they create their own copies of the videos in the desired format, and they publicly perform and display the infringing videos.  Ventura's registered copyrighted works set forth in Exhibit A hereto have been viewed thousands of times by Defendants' users.

9.    Defendants' willful infringement and other illegal conduct have harmed and continue to harm the interests of legitimate copyright owners, including Ventura.  Absent relief from the Court, Defendants' rampant infringement will continue to undermine the ability of content owners such as Ventura to conduct business.  Ventura seeks a declaration that Defendants' conduct

willfully infringes Ventura's copyrights, an injunction requiring Defendants to prevent or limit infringement of Ventura's copyrights, and damages in an amount to be determined at trial.

## THE PARTIES

**Ventura**

10.     Ventura Content, Ltd. is an Anguillan corporation with its principal place of business in Anguilla.  Ventura owns copyrights in certain adult-oriented content and distributes such content throughout the United States including in this District through its affiliates and licensees located in the United States.  The primary market for Ventura's content is in the United States, and virtually all of its business operations relating to the matters at issue in this case are conducted in the United States through its affiliated companies and licensees.  Ventura owns each of the copyrights at issue in this litigation including all of the compilations of videos distributed on behalf of Ventura and all of the new or preexisting constituent elements, *i.e.*, videos, contained therein.

11.     Ventura owns numerous copyrights for its high quality adult videos. Through its affiliates and related companies in the United States, it has invested and continues to invest hundreds of thousands of dollars annually to cultivate and distribute its videos because the Copyright Act protects its economic incentive to do so.  Ventura, through its affiliated companies, distributes and publicly displays

and performs these works (within the meaning of the Copyright Act), and/or licenses them for distribution and/or public performance: (a) through websites owned by its affiliated companies (such as www.pinkvisual.com, www.pinkvisualpass.com, and www.ipinkvisualpass.com) and a small number of other authorized Internet distribution channels; (b) on DVD and other video formats; and (c) by telecast on pay-per-view television systems.

12.   Ventura, through its affiliated companies, undertakes extensive steps to comply with federal laws concerning the dissemination of its content.  For example, in accordance with 18 U.S.C. § 2257, Ventura verifies the name and age of the performers appearing in its videos in order to ensure that these performers are not minors, maintains records confirming this information, and further labels its video content with information regarding the physical location of these records.

13.   Ventura is the owner of the valid, subsisting copyrights in each of the works listed in Exhibit A hereto.  Ventura is the owner of each of these works by virtue of being the author of the works or by means of a valid, written assignment from its original owner.  Each of these works has been registered in the United States Copyright Office in accordance with the provisions of the United States Copyright Act.  Ventura owns both the copyrights in these compilations as well as all of the constituent copyrighted elements contained therein including all new matter and preexisting materials (which consist of copyrighted videos also owned

by Ventura).  A list of these valid copyrighted works infringed by Defendant herein, including the video identification number assigned by Defendants corresponding to these works, is attached to this Complaint as Exhibit A.

**Defendants**

14.    Upon information and belief, Defendant UGC Internet Ventures, Ltd. is a corporation organized under the laws of Cyprus and operates the Accused Sites.

15.    Defendant Does 1-10 are persons or entities, currently unknown to Plaintiff, working with or acting in concert with Defendant UGC Internet Ventures to operate the Accused Sites and/or facilitate its infringement, and who are profiting from that infringement.  Ventura will provide the identities of Defendants Does 1-10 in an amended complaint, as warranted, after Ventura is able to obtain additional information and determine their identities.

<u>**JURISDICTION AND VENUE**</u>

16.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 – 15 as though set forth at length herein.

17.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

18.    This Court has original subject matter jurisdiction over the copyright infringement claims pursuant to 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331

and 1338(a).

19.     This Court has personal jurisdiction over Defendants.  Defendants transact business in this District and contract to supply goods and services in the state in connection with the matters giving rise to this suit.  In particular, Defendant UGC Internet Ventures is a party to a long-term, ongoing business arrangement with Georgia corporation NationalNet, Inc.  ("NationalNet") that provides Defendants with critical Internet hosting services for the Accused Sites. These services, obtained through Defendants in collaboration with NationalNet in Georgia, are essential to the operation of the Accused Sites and result in Defendants' pecuniary benefit.  Upon information and belief, computer servers that host the Accused Sites and provide infringing content to users are physically located in this District.

20.     In addition, using the lure of infringing materials, Defendants openly encourage users of the Accused Sites (including users in this District ) to pay for related adult services when they access the Accused Sites to view infringing video content.  Defendants advertise these related businesses via the Accused Sites and seek to direct users to other websites operated by or affiliated with Defendants that require paid subscription fees.  Defendants also derive advertising revenues directly attributable to the presence of infringing works on the Accused Sites.  For example, they permit third party advertisers to display advertisements on the

Accused Websites and receive revenues whenever their users, including users in this District, "click on," view, or make purchases through such advertisements. Thus, there is a direct and substantial nexus between Ventura's claims in this case and Defendants' transaction of business with their users in this District. Moreover, the Accused Websites fall at the most interactive end of the spectrum in the terms of its overall design, use and functionality. For example, in addition to enticing users in this District to engage in commercial transactions, Defendants enable anybody present in this District to use services that Defendants own and operate to: (a) access digital files containing Ventura's copyrighted content; (b) view infringing copies of Ventura's works; (c) comment on and rate copyrighted content; and (d) create lists of favorite videos for repeated viewing. These acts of direct infringement, for which Defendants are liable, require the repeated transmission of infringing files from Defendants' computers to their users, including, upon information and belief, to users located in this District. Thus, Defendants are responsible for the acts of infringement that, upon information and belief, have occurred in this District, where users have accessed Defendants' Accused Sites to view and download infringing copies of Ventura's works. Moreover, the Defendants' websites offers numerous other interactive features designed to improve the overall infringing nature of their service. For example, Defendants allow their users to "register" with the Accused Sites sign in using their

own user names and passwords in order to receive additional features and benefits.

21. Defendants further have engaged in tortious conduct in this state relating to the matters in suit. Upon information and belief, computer servers that host the Accused Sites and provide infringing content to users are physically located in this District.  Thus, each time a user accesses one of these Accused Sites to upload or view an infringing video, Defendants themselves engage in tortious conduct within this state by enabling or facilitating the unauthorized display and performance of such infringing content.  Thus, the acts of infringement of Ventura's copyrighted works have taken place on or through servers for the Accused Sites that are located this District.

22. Upon information and belief, Defendants also engage in widespread and continuous business activities and derive substantial revenues from their contacts with the United States as a whole.  For example, approximately 20% of Defendants' total traffic, comprising millions of views each month, comes from the United States.  In addition, Defendants have entered into contracts with businesses located in the United States for the provision of services throughout the United States.  Defendants actively monitor the traffic on the Accused Sites and purposefully target the United States and its users. Thus, in the alternative, even if Defendants are not subject to personal jurisdiction in any state, they are subject to personal jurisdiction based on their contacts with the United States as a whole.  *See*

Fed.R.Civ.P 4(k)(2).

23.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(a).

### NATURE OF THE ACTION

24.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 – 23 as though set forth at length herein.

25.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act"), Ventura has the distinct, severable, and exclusive rights to, *inter alia*, reproduce, distribute, publicly perform, and publicly display its copyrighted works, as well as the exclusive right to authorize any of these activities.  17 U.S.C. §§ 106(1), (3), (4), (5).  Defendants have appropriated and exploited Ventura's copyrighted works, resulting in the rampant infringement evident on the Accused Sites.  Defendants' acts of infringement remain ongoing to date.

26.     The Accused Sites provide access to a library of online adult videos, which Internet users may view free of charge.  A user who wants to view a video on the Accused Sites would generally proceed with three steps.  During the entire experience, the Accused Sites prominently display their logos, user interfaces, and advertising to the user.

27.     ***First***, the user goes to a site operated by Defendants by typing in

www.pornbanana.com or www.shufuni.com into the user's web browser.

28.     **Second**, the user may enter search terms into the site's search function, and receive an array of thumbnail images of videos in the site matching those terms.  On information and belief, the site creates the thumbnails, which are individual frames from videos in its library (including infringing videos) for the purpose of assisting users in locating videos.  Alternatively, rather than entering any search terms, the user may elect to view a video from a selection of thumbnails prepared and presented by the website on its home page and within certain predefined categories.  The predefined categories include those videos with the most views or the longest videos.

29.     **Third**, regardless of how a thumbnail of a video becomes presented to the user — *e.g.*, on the Accused Sites' home page, as a result of the user's search terms, or within a certain category — the user views the content by clicking on the thumbnail.  Defendants then publicly perform the chosen video by sending streaming video content from servers they control to the user's computer.  On information and belief, Defendants themselves create the copy of the infringing video files that are hosted on the servers they control and transmit multiple copies of those same video files to multiple different users.  The public performance of the video also results in a copy of the video being made and distributed to the user's computer.

30.     All uploaded videos become part of the Accused Sites' library for performance and display.  Regardless of who uploads a specific video, Defendants copy the video in their own technical format, add it to the servers they control, make it available for viewing on the Accused Sites, and provide the means for users to search for and locate the content of their choice.  Defendants commit the infringing public performance and display of Ventura's copyrighted works, and that infringement occurs on the website operated and controlled by Defendants.

31.     Defendants and the users of their websites have not received license, authorization, permission, or consent to use the registered copyrighted works owned by Ventura as set forth in Exhibit A that have appeared on the Accused Sites.  Instead, Defendants have willfully, intentionally, and purposefully publicly distributed, performed, and displayed the copyrighted works, and knowingly facilitated, enabled, induced, and materially contributed to infringing uses thereof, and refused to exercise their ability to control or supervise infringing uses thereof from which they obtain direct financial benefits.

32.     Defendants have complete control of their physical premises (*i.e.*, the servers, databases and software that comprise and control the Accused Websites), as well as the activities occurring on its system.  Defendants physically store the content files on their servers, keep track of each content file in databases, and could remove or disable access to infringing content files if they chose to do so;

they could also prevent content files from being stored in the first place, and from being distributed to the general public.  Defendants also maintain the right and ability to control the infringing activities of users.  Defendants have the ability to terminate users or block their access to the Accused Sites' site and, in fact, legally reserves the right to do so under their "Terms of Service."  By any measure, Defendants provide the site and facilities on which infringement occurs and have the right and ability to prevent or mitigate the infringing activities occurring on the Accused Sites.

33.     Defendants carefully regulate and control the kinds of content users are permitted to upload to the Accused Sites and forbid content to be posted to the Accused Sites that do not meet various criteria established by Defendants.  Upon information and belief, Defendants exert substantial influence over users of the Accused Sites by, *inter alia,* monitoring the content posted on the sites, and refusing content posted by users that does not comport with Defendants' own defined rules for the Accused Sites.

34.     Defendants profit from the infringement of Ventura's copyrighted works, and receive financial benefits directly attributable to their infringing activities.  Defendants have built an infringement-driven business by exploiting the popularity of copyrighted works to draw millions of users to their website. Defendants derive advertising revenue directly attributable to the infringing works

because (i) advertisers pay Defendants to display banner advertising to users whenever they access the Accused Sites and search for (or view) infringing videos and (ii) Defendants seek to sell related goods and services to users who are drawn to their website by the allure of free content.  There is a direct causal connection between the presence of infringing videos and Defendants' income.  Thus, the draw of infringing works — encompassing the infringement of Ventura's works — contributes substantially and directly to the values of the Accused Sites.

35.   The Accused Sites further offers a "rewards" program wherein users are rewarded with "points" for, among other things, registering for a user account, uploading content, sending links of content on the Accused Sites to other users and embedding content available on the Accused Sites on other websites.  Users can then "redeem" their points by receiving discounts on various adult-oriented goods or services requiring payment.  Upon information and belief, Defendants enter into agreements or other arrangement with the providers of these goods and services and receive revenues or other compensation when users of the accused sites pay for such good or services.  Thus, Defendants knowingly profit from allowing their users to upload and disseminate infringing content via the Accused Sites.

36.   Defendants have failed to employ readily available measures that could substantially reduce or eliminate the massive amount of copyright infringement on the Accused Sites.  Even though they are well aware of — and

have the right and ability to control — the rampant infringement on the Accused

Sites, Defendants' intentional strategy has been to take no steps to curtail the

infringement from which they profit unless notified of specific infringing videos by

copyright owners, shifting the entire burden (and high cost) of monitoring the

Accused Sites onto the victims of infringement.

37.     Defendants adopted this hands-off policy knowing that copyright

owners have limited ability to monitor for infringing videos on the sites and send

takedown notices for the videos they find.  Copyright owners can monitor for

infringing videos only after they are posted on the site, so there is an inevitable

time lag between when a video is posted and the first reasonable time at which an

owner can identify it and send a takedown notice.

38.     Defendants also have actual knowledge and notice or have turned a

willfully blind eye to the infringement occurring on the Accused Sites.  The

rampant infringement of Ventura's copyrights on Tube Sites is open and notorious,

and has been the subject of industry reports.  *See, e.g.*, Oliver J. Chiang, *The

Challenge of User-Generated Porn*, Forbes.com, August 5, 2009, at

http://www.forbes.com/2009/08/04/digital-playground-video-technology-e-gang-

09-ali-joone.html.  The Accused Sites also contain numerous "Red flags" from

which infringing activity is apparent, such as the presence of numerous full-length

or extended videos often featuring well-known adult industry "pornstars" who

appear in studio-produced and copyrighted films.  Indeed, the infringing copyrighted material on the website is a critical part of Defendants' business plans to increase the Accused Sites' traffic, market share, revenue, profits, and enterprise value.

40.     Defendants' strategy and conduct leave Ventura unable to meaningfully protect its rights.  Defendants deprive Ventura of economic returns to which it is entitled under the copyright laws, thereby undermining the system of incentives that copyright provides for the creation and distribution of creative works.

### CLAIMS FOR RELIEF

### COUNT I

### (Direct Copyright Infringement)

40.     Ventura incorporates by reference paragraphs 1 - 39 as if set forth herein.

41.     Without authorization, Defendants are distributing, publicly performing and displaying and have distributed, publicly performed or displayed or have authorized the distribution, public display or public performance of, by means of digital video transmission, Ventura's copyrighted video content listed in Exhibit A hereto in violation of 17 U.S.C. §§ 106  and 501.

42.     The infringement of Ventura's rights in the distribution, public

performance and display of each of its copyrighted video works constitutes a separate and distinct act of infringement.

43.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

44.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

45.     Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

46.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT II

### (Contributory Copyright Infringement)

47.     Ventura incorporates by reference paragraphs 1 - 46 as if set forth herein.

48.     Users of Defendants' website have infringed and are infringing Ventura's rights in their registered copyrighted works by, *inter alia,* uploading and downloading infringing copies of Ventura's copyrighted works listed in Exhibit A hereto on the Accused Sites.  Defendants' users are therefore directly infringing Ventura's exclusive rights of reproduction and distribution under 17 U.S.C. § 106.

49.     Defendants are liable under the Copyright Act for inducing the infringing acts of Defendants' users.  Defendants operate and maintain their sites with the objective of promoting their use to infringe Ventura's copyrighted works. Defendants' inducement of copyright infringement is apparent from, among other things, the predominantly infringing content available on their sites; Defendants' open listing, categorization, and advertising of obviously infringing works; Defendants' express invitations to view the most sought-after video content for free; Defendants' failure to make any earnest effort to prevent or filter copyright infringement on their sites; and Defendants' business model for the Accused Sites, which is dependent upon widespread copyright infringement including the offering of incentive programs rewarding users for uploading content.   Defendants

unlawfully have induced the direct infringement of Ventura's copyrighted works listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

50.     In addition, Defendants have actual and constructive knowledge of the infringing activity that occurs on and through their sites.  Through the creation, maintenance, and operation of the sites and facilities for this infringement, Defendants knowingly cause and/or otherwise materially contribute to the unlawful reproduction, distribution, and public performance and display of Ventura's copyrighted works, including those listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

51.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Ventura's rights.

52.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

53.     Ventura further is entitled to its attorneys' fees and full costs pursuant

to 17 U.S.C. § 505.

54.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money.  Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

## COUNT III

### (Vicarious Copyright Infringement)

55.     Ventura incorporates by reference paragraphs 1 - 54 as if set forth herein.

56.     Users of Defendants' website have infringed and are infringing Ventura's rights in their registered copyrighted works by, *inter alia,* uploading and downloading infringing copies of Ventura's copyrighted works listed in Exhibit A hereto on the Accused Sites.  Defendants' users are therefore directly infringing Ventura's exclusive rights of reproduction and distribution  under 17 U.S.C. § 106.

57.     Defendants are vicariously liable for such infringing acts.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their website, and at all relevant times have derived a direct financial benefit attributable to the infringement through that site. Defendants are therefore vicariously liable for the unlawful reproduction and

distribution of Ventura's copyrighted works listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

58.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifferent to Ventura's rights.

59.     As a direct and proximate result of Defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including Defendants' profits from infringement, as will be proven at trial.

60.     Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

61.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money.  Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to a preliminary and permanent injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Ventura prays for judgment against Defendants as follows:

1.      For a declaration that the websites owned, operated, and/or controlled by Defendants willfully infringe Ventura's copyrights both directly and secondarily.

2.      For injunctive relief requiring that Defendants and their agents, employees, officers, successors, licensees, and all persons acting in concert or participation with each or any of them, cease: (a) directly or indirectly infringing, or causing, enabling, facilitating, materially contributing to, encouraging, and inducing or participating in the infringement of any of Ventura's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created; and (b) uploading, downloading, reproducing, distributing, displaying, or performing Ventura's copyrighted works, whether through the Accused Sites or by any other means.

3.      For all relief available pursuant to 17 U.S.C. § 503 including without limitation the impoundment and destruction of any infringing copies of Ventura's copyrighted content.

4.      For statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), for actual damages plus Defendants' profits from infringement, as will be proven at trial.

5.      For Ventura's costs, including reasonable attorneys' fees, pursuant to
17 U.S.C. § 505.

6.      For pre- and post-judgment interest according to law.

7.      For such other and further relief as the Court may deem just and
proper.

Dated:  August 17, 2012                    Respectfully submitted,

                                           By:  /s/ Ronan P. Doherty
                                           Ronan P. Doherty
                                           Georgia Bar No. 224885
                                           email: doherty@bmelaw.com
                                           Randi Engel Schnell
                                           Georgia Bar No. 248592
                                           email: schnell@bmelaw.com
                                           BONDURANT MIXSON & ELMORE LLP
                                           3900 One Atlantic Center
                                           1201 W. Peachtree Street, N.W.
                                           Atlanta, Georgia 30309
                                           Telephone (404) 881-4100
                                           Facsimile (404) 881-4111

                                           Gianni P. Servodidio (*pro hac vice* forthcoming)
                                           New York Bar No. 2619039
                                           email: gservodidio@jenner.com
                                           Alison I. Stein (*pro hac vice* forthcoming)
                                           New York Bar No. 4787230
                                           email: astein@jenner.com
                                           JENNER & BLOCK LLP
                                           919 Third Avenue; 37th Floor
                                           New York, NY 10022-3908
                                           Telephone:  (212) 891-1600
                                           Facsimile:  (212) 891-1699

                                           *Attorneys for Ventura Content, Ltd.*