IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VENTURA CONTENT, LTD.,<br><br>　　Plaintiff,<br><br>v.<br><br>UGC INTERNET VENTURES, LTD., SOBONITO INVESTMENTS, LTD., and DOES 1-9,<br><br>　　Defendants. | CIVIL ACTION<br><br>FILE NO.1:12-CV-02856-TCB |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER DIRECTING THE CLERK OF COURT TO SERVE DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(2)(C)(ii)**

Gianni P. Servodidio (*pro hac vice*)
gservodidio@jenner.com
Alison I. Stein (*pro hac vice*)
astein@jenner.com
JENNER & BLOCK LLP
919 Third Avenue; 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

Ronan P. Doherty
Georgia Bar No. 224885
doherty@bmelaw.com
Randi Engel Schnell
Georgia Bar No. 248592
schnell@bmelaw.com
BONDURANT MIXSON
　& ELMORE LLP
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

*Attorneys for Ventura Content, Ltd.*

# INTRODUCTION

Plaintiff alleges that Defendants UGC Internet Ventures, LTD. ("UGC") and Sobonito Investments, LTD. ("Sobonito") are responsible for hundreds of thousands of acts of copyright infringement taking place on their websites that are hosted on servers in this judicial district. Faced with substantial exposure under United States ("US") copyright law, Defendants have resorted to procedural games to frustrate the progress of this case. Defendants have gone so far as to oppose Plaintiff's request for the Clerk of Court to undertake the ministerial act of mailing service abroad under the plain terms of Federal Rule of Civil Procedure 4(f)(2)(C)(ii). Defendants argue that such service is unavailable because Rule 4(f) and the Hague Convention on the Service Abroad of Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention") command international service via a Hague Convention signatory state's Central Authority. However, Rule 4(f), the Hague Convention, and the only case Defendants cite in support of this specious proposition – *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) – all contradict Defendants' arguments. Because Rule 4(f)(2)(C)(ii) affirmatively authorizes service by international mail, and because the Hague Convention permits such service, Plaintiff's motion should be granted.

Moreover, Defendants' argument that service can and must be made via a Central Authority amounts to nothing more than gamesmanship. As Defendants surely know, *Article 1* of the Hague Convention dictates that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, Art. 1, 20 U.S.T. 361 (1969). Plaintiff thus cannot serve Sobonito via the Central Authority, because Sobonito continues to hide in the shadows, refusing to disclose its actual address. Neither the Federal Rules nor the Hague Convention requires the Court to put up with these tactics. Because there is no question that service via the Clerk of Court pursuant Rule 4(f)(2)(C)(ii) is reasonably calculated to give Defendants notice of this action, the Court should grant the motion and allow this case to proceed.

## ARGUMENT

The parties agree that Rule 4(f) governs service in this action. The Rule provides a series of independent options to effect service on persons outside the United States, and Plaintiff has filed this motion to effect service pursuant to the option listed at Rule 4(f)(2)(C)(ii). Because Plaintiff's request complies with the Rule's requirements and the Hague Convention, the Court should grant the motion.

**I.   Rule 4(f) Allows the Clerk of Court to Serve Defendants By Mail.**

**A. Defendants Cannot Dispute that the Requested Mailings Are Reasonably Calculated to Give Them Notice.**

As an initial matter, Defendants have not contested that Plaintiff's requested mailings are *reasonably calculated to give notice* of this pending suit, as required by Rule 4(f)(2) and the Constitution. Instead, Defendants mostly ignore the record evidence that makes that conclusion inescapable. *See* Defs.' Opp'n to Pl.'s Mot. for an Order ("Defs.' Br.") at 8-10 [Dkt. No. 27]. For instance, UGC does not dispute its presence at the addresses listed in Plaintiff's motion. *See* Defs.' Br. at 8-9. And, although Sobonito claims that it is not located at UGC's addresses, it cannot dispute its own submission of testimony confirming that a member of its *Board of Directors* obtained "personal knowledge" of an October 23, 2012 delivery received at UGC's Cyprus address. November 16, 2012 Dror. Decl. ¶ 15 [Dkt. No. 17-5]. Given UGC's known addresses, as well as Sobonito's undisputed ties to those addresses and to UGC, there is no doubt that the requested service is reasonably calculated to give Defendants notice in compliance with Rule 4(f)(2) and the Constitution.[1] After all, the record confirms that the previous mailings to UGC's Cyprus address successfully provided actual notice sufficient for Defendants to have two sets of US lawyers present a series of (procedural) objections to the suit. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

---

[1] Given Defendants' evasion, the Court should accept as proof of service "other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(l)(2)(B).

1043362.1

3

306, 314 (1950) (due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Instead of contesting whether the Clerk's mailings are reasonably calculated to give them notice, Defendants argue that due process also requires a legal basis making them amenable to service. Defs.' Br. at 8-9. But that is exactly what Rule 4(f)(2)(C)(ii) provides and why Plaintiff filed this motion. By following the direction of courts that have applied Rule 4(f)(2)(C)(ii) and the Hague Convention, the Court will confirm the legal basis for service of process via the Clerk's mailings. *See* Plaintiff's Motion for an Order Directing the Clerk of Court to Serve Defendants Pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii) at 6-10 [Dkt. No. 17-1].

**B. The Federal Rules Authorize Service of Process by International Mail Sent by the Clerk of Court to Hague Convention Signatory Countries.**

Left with no way to contest reasonable notice, Defendants resort to rewriting Rule 4(f) and the Hague Convention to evade the proper method of service that Plaintiff has requested. Defendants claim that the language of Rule 4(f)(2)(C)(ii), the Hague Convention, and *Brockmeyer*, somehow combine to preclude service by mail in Hague Convention countries. But Defendants' arguments depend on converting the list of service *options* under Rule 4(f) and the Hague Convention into *exclusive requirements*. Because neither Rule 4(f) nor the Hague Convention

requires service (or an attempt at service) through the Central Authority, the Court should reject Defendants' absurd construction.

### 1. Neither Rule 4(f) nor the Hague Convention Require Service Via a Central Authority in this Case

*First*, the text, structure, and Advisory Committee Notes of Rule 4(f) make clear that Rule 4(f) provides a series of options to effect service. In fact, the Rule provides different methods of service in separate subsections (1), (2) "***or***" (3). That plain language of the Rule (the use of the word "or") provides that service may be completed according to any subparts that may apply. *See United States v. Garcia*, 718 F.2d 1528, 1532-33 (11th Cir. 1983) ("The use of a disjunctive in a statute indicates that alternatives were intended."). And, the leading case of *Rio Properties, Inc. v. Rio International Internlink* confirms that Rule 4(f) creates no "hierarchy of preferred methods of service" and Rules 4(f)(1), 4(f)(2), and 4(f)(3) are each "one means among several which enables service of process on an international defendant." 284 F.3d 1007, 1015-16 (9th Cir. 2002); *cf. Prewitt Enters., Inc v. OPEC*, 353 F.3d 916, 927 (11th Cir. 2003) (discussing *Rio Properties* but finding it inapplicable where an Austrian law barred the plaintiff's methods of service).

*Second*, the Convention's plain language does not mandate service via the Central Authority merely because Article 5 authorizes that procedure. The

Convention's Article 10(a) goes on to permit that, "[p]rovided that the State of destination does not object, the present Convention shall not interfere with – a) the freedom to send judicial documents, by postal channels, directly to persons abroad . . ." Hague Convention, Art. 10(a). Likewise, the Convention's Article 19 provides that, "[t]o the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." Hague Convention, Art. 19. Reading these provisions together with Article 5 again contradicts Defendants' argument that the Convention mandates service via a Central Authority.

United States Courts have made clear that:

> [the Hague Convention] allows service to be effected without utilizing the Central Authority as long as the nation receiving service has not objected to the method used. Thus, the more liberal methods provided in the Federal Rules of Civil Procedure and state long-arm rules may be used as long as the nation receiving service has not objected to them.

*DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir. 1981); *Girafa.com, Inc. v. Smartdevil, Inc.*, 728 F. Supp. 2d 537, 543 (D. Del. 2010) (holding that service of process through the Central Authority "is not mandatory" and rejecting the argument that valid service can only be effected in a Hague signatory country through its Central Authority). Defendants do not contend that

either Cyprus or the British Virgin Islands have objected to service via international mail. And, despite separately submitting a 30-page declaration from a Cypriot lawyer, Defendants cannot and do not argue that Cyprian law prohibits it.[2] Defendants' arguments that service by the Central Authority is mandatory, therefore, lack merit.

### 2. Defendants' Interpretation of Rule 4(f)(2)(C)(ii)'s "Allows But Does Not Specify Other Means" Is Wholly Unsupported

Because the Hague Convention does not require service through a Central Authority as the exclusive means of service, Defendants cannot take this case out of Rule 4(f)(2)(C)(ii). The Rule's introductory paragraph states that, "if an international agreement allows but does not specify other means," service in a foreign country may be made by mail sent by the Clerk of Court. Given its context within Rule 4(f), the meaning of Rule 4(f)(2)'s "allows but does not specify other means" language is clear: where an applicable international agreement – including the Hague Convention – permits other means of service but does not lay out the particulars for those other means of service, the Clerk of Court is authorized to serve via those methods listed in Rule 4(f)(2).

---

[2] *See* Fed. R. Civ. P. 4(f)(2)(C) (disallowing service by mail if the foreign country's law prohibits it); Cyprus Judicial Assistance, available at http://travel.state.gov/law/judicial/judicial_696.html (last visited on January 31, 2013) ("Service of Process by international registered mail is permitted under Cypriot law in administrative and civil cases.").

Indeed, the 1993 Advisory Committee Notes to Rule 4(f) explain that "Paragraph (2) provides alternative methods for use *when internationally agreed methods of service are not intended to be exclusive*." Fed. R. Civ. P. 4, 1993 Advisory Committee Notes (emphasis added); *see also* 4B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure at § 1133 (3d ed. 2002) ("Paragraph 2 of Rule 4(f) provides options to the party serving process when internationally agreed process methods are not intended to be exclusive . . . ." ); 1 James Wm. Moore, Moore's Fed. Practice 3d §4.52[2][d] (3d ed. 2012) ("When international agreements permit additional methods of service . . . process may be effected by mail.").

Despite this consistent and clear commentary, as well as the direction of the Advisory Committee Notes to Rule 4(f), Defendants argue that Rule 4(f)(2)'s "allows but does not specify other means" language actually bars service by international mail, because "the *only means of service specified* by the Hague Service Convention is pursuant to Article 5." Def.'s Br. at 5-6 (emphasis added). Defendants' interpretation of Rule 4(f) is clearly incorrect. It is contrary to the case law interpreting Rule 4(f), and would essentially write Subsection (2) out of Rule 4(f).

Subsection (1) of Rule 4(f) addresses "internationally agreed means of service," *i.e.*, Article 5 of the Hague Convention (indeed, the subsection specifically references those means "authorized by" the Hague Convention). *See Brockmeyer*, 383 F.3d at 804 (Rule 4(f)(1)'s "internationally agreed means" of service refers to the Central Authority affirmatively authorized by the Hague Convention). By contrast, Subsection (2) of Rule 4(f) references international agreements that allow for "other means" of service but do not specify those "other" means.[3] The term "other," as used in Subsection (2), plainly refers to means of service "other" than the "internationally agreed means" set out in Subsection (1). Otherwise, Subsection (2) would be entirely superfluous and would not perform any work independent of Subsection (1).[4] *See Neal v. Equifax Credit Info. Servs., Inc.*, No. CIV A 103-CV-0761-JE, 2004 WL 5238126 at *6 (N.D. Ga. Mar. 11, 2004) (applying the "cannon of statutory construction whereby courts interpret statutes so as to give effect to every part of a statute") (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

---

[3] Article 10 of the Hague Convention does just that: it provides that the Hague Convention allows service by international mail, but it does *not* specify the particulars for that "other means" of service.

[4] If the "other means" of service in Subsection (2) were to refer to the "internationally agreed means" of the Central Authority provided for in Subsection (1), then Subsection (2) would serve no independent purpose from Subsection (1).

In short, Defendants' interpretation of the "other means" of service referenced in Rule 4(f)(2) as referring to the same "internationally agreed means" of service authorized by an international agreement referenced in Rule 4(f)(1) (*i.e.*, the Hague Convention's Central Authority), violates clear cannons of statutory interpretation. In addition, Defendants' reading of Rule 4(f) violates the clear policy that Rule 4(f) create no "hierarchy of preferred methods of service," and that Rules 4(f)(1), 4(f)(2), and 4(f)(3) are each "one means among several which enables service of process on an international defendant." *Rio Props.*, 284 F.3d at 1015-16. Accordingly, Rule 4(f)(2)'s reference to "other means" refers to just that, other means of service beyond those affirmatively authorized by the terms of the Hague Convention.[5]

### 3. *Brockmeyer* Held that Service by International Mail is Both Permitted under the Hague Convention and Authorized by Rule 4(f)(2)(C)(ii)

Defendants cite *Brockmeyer* as the only case in support of their argument that the language of Rule 4(f)(2)(C)(ii) and the Hague Convention combine to prohibit service via international mail in a Hague signatory country. S*ee* Defs.' Br. at 3-7. Defendants completely fail to address *Brockmeyer*'s holding that "[s]ervice

---

[5] This interpretation of Rule 4(f)(2) also comports with the purpose underlying the 1993 revision to Rule 4: "The general purpose of this revision is to facilitate the service of the summons and complaint." Fed. R. Civ. P. 4, 1993 Advisory Committee Notes.

by international mail is affirmatively authorized by Rule 4(f)(2)(C)(ii)." *Brockmeyer*, 383 F.3d at 808. Defendants' mischaracterization of *Brockmeyer* cannot thwart this motion.

In *Brockmeyer*, the Ninth Circuit examined the validity of purported service by international mail that a plaintiff sent *directly* to a defendant in Great Britain, a signatory to the Hague Convention. In examining that mode of service, the court first held that the Hague Convention permits service by international mail so long as the receiving country does not object. *Id.* at 803. However, because the Hague Convention merely permits mail service, the court in *Brockmeyer* also held that "[a]ny affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed." *Id.* at 804. Thus, the court had to look to the Federal Rules to determine the validity of mail service. In making that examination, the court held that Rule 4(f)(2)(C)(ii) provides "[e]xplicit, affirmative authorization for service by international mail . . . for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which the suit is filed." *Id.* Remarkably, Defendants fail to cite this section of the decision in their briefing to the Court. It was only because the *Brockmeyer* plaintiffs had not sent their international notice via the Clerk, and by a

form of mail requiring a signed receipt, that their attempt to effectuate service under Rule 4(f)(2)(C)(ii) was deemed improper. *Id.* at 804-05. In stark contrast, Plaintiff has followed *Brockmeyer*'s holding and Rule 4(f)(2)(C)(ii) to the letter by filing this motion. Plaintiff's requested service is proper and Defendants' citation of *Brockmeyer* is (at best) unavailing.

## II.    The Court Should Not Require Service via a Central Authority

Because neither the Hague Convention nor the plain language of Rule 4(f) requires service via the Central Authority, the law does not imply any requirement that Plaintiff attempt service in that manner as a precondition for service under Rule 4(f)(2)(C)(ii). To the contrary, *Rio Properties* confirms that the manners of service provided in Rule 4(f) are equally and independently available. 284 F.3d at 1015. In short, there is no legal—or logical—support for Defendants' argument that Plaintiff should be put to the significant additional expense and delay of making parallel efforts to serve Defendants through a Central Authority, before authorizing the Clerk to effect Rule 4(f)(2)(C)(ii) service.[6]

---

[6] The fact that the plaintiffs in *Tracfone Wireless, Inc. v. Sunstrike Int'l Ltd.*, and *Maale v. Francis* elected to pursue multiple methods of service does not import new requirements into the text or structure of Rule 4(f) or the Hague Convention. Indeed, those decisions make it clear that plaintiffs had the choice of utilizing one of Rule 4(f)'s subsections. *Tracfone Wireless v. Sunstrike Int'l Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011); *Maale v. Francis*, 258 F.R.D. 533, 536 (S.D. Fla. 2009).

In addition to getting the law wrong, Defendants' argument that Plaintiff must first attempt service through a Central Authority amounts to an invitation to futile and costly procedural delays. In the nine months following Plaintiff's May 2012 subpoena to identify the operators of the Accused Sites, Plaintiff has made numerous efforts to locate and serve Defendants. *See* December 17, 2012 Servodidio Decl. ¶¶ 8, 10-11 [Dkt. No. 17-3]. And, despite now having engaged four sets of US lawyers to represent their interests, Defendants' lawyers will not accept service.[7] Indeed, Defendants continue to resist service by any means they can conjure.[8] The Court need not hold this case or Plaintiff hostage to these tactics.

In addition, Defendants must know that Plaintiff cannot readily serve Sobonito via a Central Authority, because Sobonito continues to hide its physical address. Indeed, *Article 1* of the Hague Convention dictates that "[t]his Convention shall not apply where the address of the person to be served with the

---

[7] Defendants' New York counsel must be in regular contact with Sobonito because they also defended Sobonito against claims filed by the Federal Trade Commission in the Northern District of Illinois in 2005 based on Sobonito's spamming activities targeting US consumers. February 4, 2013 Servodidio Decl. ¶ 7 & Ex. F (attaching copies of the complaint and consent judgment).

[8] For example, in their *forum non conveniens* brief, Defendants say they will reveal Sobonito's address if – but only if – Plaintiff will agree to pursue these claims in Cyprus. *See* Defs.'s Mot. to Dismiss for *Forum Non Conveniens* Br. at 12 n.7 [Dkt. No. 26-1].

1043362.1

13

document is not known." Hague Convention, Art. 1; *see also Chanel Inc. v. Acheterchanel.com*, Case No. 12-CV-21854, 2012 WL 3544844, at *2 (S.D. Fla. Aug. 16, 2012) (holding the Hague Convention inapplicable to service in a Hague signatory country where the defendants' physical addresses were unknown). Despite arguing that Plaintiff must resort to Article 5 of the Convention, Sobonito has attempted to avoid service by claiming that it is not located at any address provided by Plaintiff, claiming that service by the Clerk is improper, and otherwise refusing to disclose its actual address. *See* Defs.' Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b) Br. at 5-6 & 9 n.5 [Dkt. No. 9-1] (disputing Plaintiff's listed addresses for Sobonito); Defs.' Br. at 2 & 9 (disputing Plaintiff's listed addresses for Sobonito). Rather than require Plaintiff to make a futile attempt to serve Sobonito and a parallel attempt to serve UGC through a Central Authority that will delay this case for months and cost Plaintiff thousands of dollars, the Court should confirm that Rule 4(f) requires no such efforts.[9]

---

[9] If the Court were to somehow conclude that Plaintiff must serve Defendants through a Central Authority, given the foregoing, Plaintiff would be forced to move for alternative service under Rule 4(f)(3). Rule 4(f)(3) provides that service may be effected "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). *See, e.g.*, *Broadfoot v. Diaz (In re Int'l Telemedia Assoc., Inc.),* 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000) (explaining that Rule 4(f)(3) was "adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods for service of process in foreign countries."); *LG Electronics, Inc. v. ASK Appliances, Inc.*, Case

# CONCLUSION

The Hague Convention permits service by international mail and Rule 4(f)(2) affirmatively authorizes such service upon Defendants. Defendants have failed to demonstrate any just reason to delay the Clerk of Court's sending of service via mail requiring a signed receipt to Defendants at the addresses provided by Plaintiff. Accordingly, Plaintiff requests that the Court grant Plaintiff's motion and enter the Proposed Order attached as Exhibit 6 to Plaintiff's Motion for an Order Directing the Clerk of Court to Serve Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii).

Respectfully submitted, this 4th the day of February, 2013.

/s/ Ronan P. Doherty
Ronan P. Doherty

---

No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (authorizing alternative service on a foreign defendant's domestic counsel rather than continuing to "countenance the continued attempts to unnecessarily frustrate service upon [Defendants] and further delay the instant litigation.").

# RULE 7.1D CERTIFICATE OF FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, I certify that the foregoing submission was prepared using 14 point Times New Roman font.

/s/  Ronan P. Doherty
Ronan P. Doherty
Georgia Bar No. 224885

# CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the within and foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR AN ORDER DIRECTING THE CLERK OF COURT TO SERVE DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(2)(C)(ii)** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| Phillip S. McKinney | Andrea L. Calvaruso |
| Richard H. Sinkfield | Taraneh J. Marciano |
| Joshua P. Gunnemann | Kelley Drye & Warren-NY |
| ROGERS & HARDIN LLP | 101 Park Avenue |
| 229 Peachtree Street NE | New York, NY 10178 |
| 2700 International Tower | 212-808-7800 |
| Atlanta, GA  30303 | |

This 4th day of February, 2013.

/s/  Ronan P. Doherty
Ronan P. Doherty
Georgia Bar No. 224885