IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VENTURA CONTENT, LTD., <br><br> Plaintiff, <br><br> v. <br><br> UGC INTERNET VENTURES, LTD., SOBONITO INVESTMENTS, LTD., and DOES 1-9, <br><br> Defendants. | CIVIL ACTION <br><br> FILE NO. 1:12-CV-02856-TCB |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS UGC INTERNET VENTURES, LTD. AND SOBONITO INVESTMENTS, LTD.'S MOTION TO DISMISS COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*__**

# **INTRODUCTION**

The doctrine of *forum non conveniens* gives courts discretion to dismiss cases precisely like this one. As set forth in Defendants' Memorandum of Law supporting its Motion for Dismissal on *Forum Non Conveniens* ("FNC") Grounds ("FNC Br."), this Court is not an appropriate forum for Plaintiff Ventura Content, Ltd. ("Plaintiff")'s copyright infringement claims and should be dismissed.

The "ultimate inquiry" in *forum non conveniens* analysis is "where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). While Plaintiff wishes to portray itself as a white knight on a mission to protect free speech, in reality it is driven by its own self-interest. Plaintiff brings suits like this not for any greater common good, but to recover monetary settlements and judgments from competitors in its industry. It does not serve justice to allow Plaintiff to use the resources of U.S. courts to fill its coffers while incorporated as a shell company in Anguilla in order to evade U.S. jurisdiction, as it has done at least once before. *Kertesz v. Net Trans., Ltd.*, 635 F. Supp. 2d 1339 (S.D. Fla. 2009). *See* p. 15, *infra*.

Moreover, Georgia is no more convenient a forum than Cyprus to Plaintiff itself, which is based in Anguilla, whereas Georgia is highly inconvenient to Defendants who are based in Cyprus. Plaintiff's Opposition to the FNC Br.

("Opp.") does not set forth relevant and admissible facts which even if true would support the choice of this forum.  Rather, it is rife with hyperbole, speculation and red herrings that do not bear on the FNC Motion.

Because the doctrine of *forum non conveniens* is "designed to avoid unfairness, vexatiousness, and oppressiveness of a trial away from *defendant's* home base," *McCarthy v. Can. Nat'l Rys.,* 322 F. Supp. 1197, 1198 (D. Mass. 1971) (emphasis added) (relying on *Koster*, *supra),* when the Court considers only the evidence properly before it which is relevant to the *forum non conveniens* analysis, it is clear that Defendants' motion should be granted.

## ARGUMENT

### A. The Court Should Refuse To Consider Statements Unsupported By Admissible Evidence And Not Relevant To This Motion

Plaintiff's Opposition brief and supporting declarations are replete with unsupported statements or those based upon improper hearsay.  For example, Plaintiff falsely alleges (Opp. at 4) that Defendants "derive a financial benefit from" infringements that allegedly occur via the Tube Sites, despite the express declarations from Defendants that they derive no revenue from uploading, or displaying any video content.  (*See* Dkts. 9-3, ¶ 7; 25-3, ¶¶ 14-24 .)  Moreover, the allegedly infringing videos constituted *less than one-tenth of one percent* of the total videos located on the Tube Sites at any given time.  (Dkt. 25-3, ¶ 28.)  Thus,

2

Plaintiff's comparison (Opp. at 4 n.1) of Defendants' alleged acts to those of the *Grokster* defendants is absurd.[1]  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 985 (C.D. Cal. 2006) (87.33% of uploaded files and almost 97% of files requested for download were infringing or highly likely so).[2]

Plaintiff also submits the declaration of its lead trial counsel which attaches inadmissible hearsay documents proffered for the truth of the statements therein. For example, paragraph 5 of the Servodidio declaration (Dkt. 31-1) attaches pages from various individuals' "LinkedIn" internet profiles and a third party "industry" website for the purpose of proving the facts contained in such profiles and website, namely, the titles and languages spoken by the individuals listed in the profiles. Servididio's declaration also makes the stunningly presumptuous deduction that because the LinkedIn profile for one individual (which does *not* provide his email address) refers to the nickname "JC," this individual must *surely* also be the custodian of an email address referenced in an ad on a completely unrelated website merely because the email address includes the letters "JC."  In short, the

---

[1] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), *Incorp Servs. Inc. v. Incsmart.Biz Inc.*, 2012 WL 3685994 (N.D. Cal. 2012), and *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003) ("*Grokster*"), are distinguishable from the present case for the same reasons.

[2] Similarly, any comparison to *Arista Records LLC v. Usenet.com, Inc.*, 663 F. Supp. 2d 124 (S.D.N.Y. 2009), where "[t]he record [was] replete with instances of [d]efendants and their employees specifically engendering copyright infringement and targeting infringement-minded users to become subscribers of [d]efendants' service," *id.* at 132, is entirely misplaced.

3

entire Servodidio declaration constitutes hearsay, or otherwise contains assertions not relevant to the FNC Br. Therefore, the Court should strike or disregard this declaration and the portions of Plaintiff's Opposition that rely on it.

Similarly, Plaintiff's blatant attempts to use its response to the FNC motion as an improper sur-reply to Defendants' Reply brief on personal jurisdiction (Dkt. 25) ("Reply") should not be allowed. The arguments in the Opposition and the paragraphs in the Vivas declaration (Dkt. 31-8) that have no bearing on the FNC Motion should also be ignored by the Court.[3]

---

[3] *See, e.g.*, Opp. at 3 (alleging that Defendants "target US residents and even tailor their 'terms of service' toward users within specific US states"); at 4 n.1 (responding to allegation in Reply); at 5 n.2 (referring to arguments made in Reply); at 8 n.4 (arguing long-arm statute provisions); at 8-10 (arguing Defendants' alleged contacts with the U.S.); at 10 n.6 (disputing Defendants' contacts with the U.S); at 19 n.10 (responding specifically to cases cited in Defendants' "jurisdictional briefs"); at 20 n.11 (responding to arguments set forth in the Reply). Plaintiff's rehashing of Defendants' alleged contacts with the U.S. (Opp. at 8-10; Dkt. 31-8, ¶¶ 19-20 ) are irrelevant to the FNC issue and have all been rebutted (*see* Dkts. 9-2; 9-3; 25-3).

The Opposition does, however, falsely accuse Defendants of misrepresentations which require response. Defendants do not argue that subsection (1) of the Georgia specific jurisdiction long-arm statute, the "transacting business" prong, is limited *only* to cases where the "defendant transacts business with the plaintiff." *See* Opp. at 8 n.4 (misciting Reply at 6-7, which mentions jurisdiction where the plaintiff's claims arise from business transactions where the plaintiff resides in state *or* where defendant's business was "*directed at*" the plaintiff in state). The new cases cited by Plaintiff in footnote 4 are not inconsistent. In *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207-08 (N.D. Ga. 1995), the plaintiff was a Georgia native with "undeniable" ties to this state. In *U.S. v. Billion Int'l Trading, Inc.*, 2012 WL 1156356, *1, 4 (N.D. Ga. 2012), defendant's infringing Atlanta Braves baseball caps gave this Court particular interest in exercising jurisdiction. The caps were seized by Customs at the port in Atlanta and the plaintiff was the U.S. Attorney's Office in Atlanta. *Id.* at *1. Defendants' actions are not directed at Ventura here (or elsewhere) and no similar state interest exists. Most importantly, UGC's contract with NatNet does not specifically give rise to

**B.     Cyprus Is An Adequate Forum**

Defendants have met their burden to show that Cyprus is an adequate forum by submitting an affidavit from a Cypriot attorney (Dkt. 26-2), which states, among other things, that: (1) Cyprus has an independent and impartial court system which allows for the introduction of evidence and a right to a fair and public trial (¶¶ 11-17); (2) English is widely used in Cyprus and in practice, courts often accept documents in the English language as evidence (¶ 16); (3) Cypriot courts regularly employ and have at their disposal translators to translate oral testimony from the English language to an "official" language (¶17); (4) Cyprus recognizes copyrights, including private causes of action for infringement (¶¶18-29); (5) Cyprus courts often apply foreign law in the adjudication of a dispute and require only that the party invoking foreign law set it out in its pleadings and later prove it at trial (¶¶ 37, 39), as is true in the U.S.; (6) where, as here, claims allege copyright infringement occurred in a country where the law deems the claim akin to tort, the Cyprus court has substantive jurisdiction (¶¶ 42, 44, 47); (7) Plaintiff may seek the same relief in the Cyprus courts (¶¶ 46, 47); and (8) the Cypriot courts would have territorial jurisdiction over Plaintiff's claims (¶¶ 32,45).

---

Plaintiff's claims; thus, subsection (1) of the Georgia long-arm statute is inapplicable.  (*See generally* Reply at 2-8.)

Plaintiff sets forth absolutely no evidence, in the form of a declaration by a Cypriot attorney or otherwise, to rebut Defendants' showing that Cyprus is an adequate forum. (Opp. at 12-14.) Therefore, the Court should reject Plaintiff's unsubstantiated allegations[4] of inadequacy of forum. *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1312-13 (11th Cir. 2001).[5]

Contrary to Plaintiff's allegations (Opp. at 13), there is no requirement to show that a Cypriot court has tried a similar case. In fact, it is not even necessary that the plaintiff have the exact same claims in the alternate forum. *See In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d 792, 797-98 (N.D. Ill. 2007).[6] Likewise, Plaintiff's reliance on *Mercier v. Sheraton Int'l, Inc.*, 935

---

[4] Plaintiff's claim (Opp. at 23 n.12.) to a "qualified right" to discovery regarding both the personal jurisdiction and *forum non conveniens* issues has no basis. *Beebe v. Housatonic R.R. Co., Inc.*, 2005 WL 1173974, *3 (N.D.N.Y. 2005), makes clear no such "qualified right" to discovery exists with regard to a *forum non conveniens* motion. *Sikes v. Sloan*, 2012 WL 1038806, *5 (S.D. Ga. 2012) establishes that a right to discovery on personal jurisdiction exists only "when the plaintiff alleges sufficient facts to suggest with 'reasonable particularity' the possible existence of the requisite contacts between the defendant and the forum state." No such showing has been made here.

[5] *Jackson v. Grupo Indus. Hotelero, S.A.*, 2008 WL 4648999 (S.D. Fla. 2008), does not support Plaintiff's contention that its claims are not realistically cognizable in Cyprus, and is wholly distinguishable. In *Jackson,* Mexico was rejected as an inadequate forum because, unlike here, defendants offered no evidence of its adequacy, "such as a declaration of Mexican intellectual property attorney," but only a questionable ten year old website article. *Id.* at *10-11.

[6] Plaintiff's attempt to distinguish this case (Opp. at 13 n.7) by referring to it as a "run-of-the-mill" tort case falls flat, as the language of the decision itself acknowledges it was a "complex" action. Moreover, that it is not a copyright infringement action does not defeat the principle for which Defendants cite this decision, namely, that prior inexperience in handling a particular type of matter would render Cypriot courts inadequate.

6

F.2d 419 (1st Cir. 1991), *Heriot v. Byrne*, 2008 WL 4874297 (N.D. Ill. 2008), and *Grokster, supra*, is misplaced.  In *Mercier*, the forum was deemed inadequate not because the Turkish lawyer's affidavit stated that Turkish courts had never adjudicated the same claims, but because the affidavit made only the general recitation that Turkey can hear "commercial claims," rather than expressly stating Turkish law recognizes claims for breach of contract and tortious interference with contract, or some comparable action.  935 F.2d at 425-26.  In *Heriot*, the court found Australia was not an adequate forum because, as defendants conceded, the claims for copyright infringement could not be adjudicated there since the infringement occurred outside of Australia.  2008 WL 4874297, at *4.  In *Grokster,* the forum was found inadequate because plaintiffs were U.S. citizens whose choice of forum was entitled to deference, not all defendants were subject to jurisdiction in the alternative forums, and defendants did not demonstrate that plaintiffs' claims could be tried in either suggested alternative forum via expert declaration or otherwise.  243 F. Supp. 2d at 1095.  Conversely, here, all parties are foreign entities, all defendants are subject to jurisdiction in Cyprus, and Defendants have submitted evidence of Cyprus' adequacy to hear Plaintiff's claims in the form of a Cypriot attorney's declaration.

Plaintiff's claim (Opp. at 13) that Cypriot attorney Mavrokefalos' declaration "concedes that the laws of Cyprus do not even address whether a Cypriot court would have subject matter jurisdiction over the matter" is false. Plaintiff taking issue with word choice in a few sentences out of a thirty page declaration is not sufficient to rebut the declaration. The use of discretionary words such as "possibly" or "may," rather than "must" does not render Mr. Mavrokefalos' declaration "equivocal," particularly because when read in its entirety, the declaration unequivocally shows that subject matter jurisdiction is appropriate in Cyprus. As in the U.S., no attorney can state with absolute certainty what a judge will decide. If Plaintiff's position were given credence then no motion for *forum non conveniens* could ever succeed.

### C.   Private And Public Factors Weigh In Favor of Dismissal

Plaintiff's citation (Opp. at 11) to the *Wilson* case for the proposition that a defendant has a "heavy burden" to overcome plaintiff's choice of forum, which is entitled to "deference and a presumption in its favor" is wholly misleading.[7] The presumption and deference present in the *Wilson* case is not

---

[7] Plaintiff's reliance (Opp. at 11) upon a footnote in the *W.S. McDuffie* case for the proposition that the Court should not shift inconvenience from Defendants to Plaintiff is inapplicable here as *McDuffie* involved a resident U.S. plaintiff and a U.S. defendant and included no analysis whatsoever. Plaintiff's citation (*id.*) to the *La Seguridad* case is also misleading, as the "evidence" sought by the court was merely an explanation of the parties' claims and defenses sufficient for the court to

8

present here because Plaintiff is not a U.S. company.  Plaintiff's citation and purported quote from *SME Racks, Inc. v. Sistemas Mecanicos Para Eletronica, S.A.*, 382 F.3d 1097 (11th Cir. 2004) (Opp. at 11), for the proposition that "the presumption in favor of the plaintiff's choice of forum is 'still applicable' with respect to non-US plaintiffs" is completely disingenuous.  Not only did the *SME* case focus solely on the strong preference of choice of forum of the *U.S.* plaintiff in the case, but the quoted "still applicable" language appears nowhere in the decision.  Plaintiff's reliance (Opp. at 16 n.9) on *Bigio v. Coca-Cola Co.*, 448 F.3d 176 (2d Cir. 2006) is likewise unavailing.  There, the appellate court acknowledged that a foreign plaintiff's decision to sue in the U.S. is entitled to *some* weight because the district court did not consider it at all as a factor in the balancing test.  *Id.* at 179.  The court also emphasized that the greater the "legitimate reasons," for choosing the U.S. forum, the more deference may be given to the choice, even in the case of a foreign plaintiff.  *Id.*[8]

---

determine the factual issues in the case.  Here, given all of the motion practice and declarations submitted by both parties, the Court has ample information to determine the factual issues implicated in this case.

[8] The "legitimate and substantial" reasons for suing in the U.S. were that defendants resided here and plaintiff tried but could not obtain relief in Egypt where their property was wrongfully seized because they were Jewish and where their previous attempts to recover the property from Egyptian authorities had failed.  *Id.*  There are no such compelling reasons here.

9

As Plaintiff is not entitled to the benefit of a strong presumption of its choice of forum, the Court must weigh all the private and public factors to determine whether the burden to the foreign Defendants in adjudicating this dispute in the U.S. is outweighed by the benefits of trying a case here.  "If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable."  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249-50 (1981).  As set forth in the FNC Br. and herein, when all the factors are properly weighed, they warrant dismissal.

### 1. The Majority Of Relevant Evidence Is Located Outside This Forum

Only witnesses and information necessary to prove Plaintiff's copyright infringement claims and Defendants' defenses are relevant to the FNC analysis. With the exception of the information regarding Plaintiff's exploitation and ownership of the copyrights (including the validity of its copyright registrations), which Plaintiff alleges are not kept in its own possession in Anguilla but in the possession of its *agents* in Nevada, the only arguably relevant evidence to Plaintiff's claims resides outside of the U.S. under Defendants' possession or control.[9]  In particular: (1) information and witnesses with knowledge regarding

---

[9] Plaintiff's allegation (Opp. at 7 n.3) that Defendants "failed to disclose the location of their witnesses" and "resisted discovery," has no basis in fact. Defendants sought *and obtained* an order suspending the submission of Initial Disclosures pending motions to dismiss.

the creation, operation and maintenance of the Tube Sites via which Plaintiff alleges the infringing occurs reside in Cyprus; (2) individuals who understand and control the operation of the Tube Sites, including the process by which user content is uploaded, stored and displayed, and related information, are located in Cyprus or Israel; (3) witnesses with knowledge regarding the Tube Sites' terms and conditions, including takedown and abuse policies, and related documents, are located in Cyprus or Israel; (4) information regarding content maintained on the Tube Sites is located in the possession or control of agents in Israel; (5) Defendants' corporate witnesses are all located outside of the U.S; and (6) Plaintiff's Federal 30(b)(6) corporate witnesses, whom Defendants are entitled to examine, are located outside of the U.S.  (*See generally* Exhibits 1, 2, and 3 hereto.)  Even though the majority of statements in Plaintiff's Opposition with respect thereto are based upon improper hearsay, Plaintiff does not dispute that all Defendants' relevant documents and witnesses are outside of the U.S.  (*See* Opp. at 7-8.)

      The majority of alleged witnesses and information cited in Plaintiff's Opposition have no bearing on the substantive issue in this matter, namely whether Plaintiff owns valid copyrights in videos which allegedly were unlawfully copied and displayed on the Tube Sites.  In particular: (1) Defendants' contracts with and

payment to third party vendors for the provision of hosting and storage of data; (2) information regarding the identity of users who uploaded and viewed copies of the allegedly infringing works – against whom Plaintiff has conceded that it has never pursued claims (*see* Dkt. 31-8, ¶ 18); (3) correspondence regarding "technical support issues" related to the Tube Sites; (4) data regarding particular consumers' access to or use of the Tube Sites; (5) take down notices sent by parties other than Plaintiff; (6) contracts between Defendants and third party advertisers and related advertising data; and (7) agreements with domain registrars (who have no involvement with the content located on a website) for the Tube Sites. Therefore, the location of such evidence should not be considered in assessing the convenience of this forum. Nevertheless, such evidence will also be in the possession or control of Defendants outside the U.S. and is not necessary to obtain from third parties. (*See generally* Exhibits 1, 2, and 3 hereto.)

### 2. Other Private And Public Interests Favor Dismissal

Plaintiff's allegation that all of the witnesses speak English (Opp. at 19) – which is based on hearsay – even if taken as true, is not dispositive and is only one factor to weigh in the analysis. *Piper Aircraft Co.*, 454 U.S. at 249.[10] Moreover, the Cypriot attorney makes clear that English is widely used in the country and, in

---

[10] Indeed, if the necessity of translating documents and testimony was enough to prevent dismissal for *forum non conveniens*, it would eviscerate the doctrine.

practice, courts often accept documents in the English language as evidence without translation. (Dkt. 26-2, ¶ 16.) He also confirms that Cypriot courts regularly employ and have at their disposal translators to translate oral testimony from the English language to an "official" language when necessary. (*Id.* ¶ 17.) Moreover, given the foreign domicile of both parties, some translation may be required even if this Court retained jurisdiction of this case. For example, in light of Ventura's recent redomiciliation (Dkt. 31-8 at 2 n.1), translation from the official languages of Aruba, *i.e.,* Dutch and Papiamentu, may be needed. Therefore, this factor can safely be considered neutral in the Court's analysis. Similarly, Plaintiff's supposition that the application of U.S. law would be unduly burdensome to a Cyprus court or the parties is pure speculation. Mr. Mavrokefalos specifically states that "Cyprus Courts take into account foreign law as a simple matter of fact." (Dkt. 26-2, ¶ 39). Cyprus courts often apply foreign law and may do so upon simple pleading of the law by the party asserting it and proving it at trial. (*Id.* ¶¶ 37-39.) Plaintiff offers no basis for its claim that application of U.S. law or reliance upon an English decision would require legal experts from around the globe.[11]

---

[11] Moreover, as Defendants are not located in the U.S. and do not have property or funds located here, the enforcement of any judgment would necessarily require

The public interest likewise favors dismissal.[12]  As set forth in the FNC Br., the mere fact that a foreign entity owns a U.S. copyright registration is not a sufficient public interest to defeat dismissal on grounds of *forum non conveniens*.  (*See* FNC Br. at 16-17 (citing *Creative Tech., Ltd.*).)[13]  None of the cases Plaintiff cites (Opp. at 18) support its allegation to the contrary because they do not involve *forum non conveniens* analysis.

In addition, Plaintiff does not create any works in this country, and based on the declaration of Ms. Vivas, Plaintiff is nothing but an Anguillan shell company with no documents or employees in the U.S.  Nor can the public

---

additional costs and procedures.  Contrary to Plaintiff's allegation, this does not suggest Defendants would ignore any judgment of the Court.

[12] Plaintiff's citation (Opp. at 18) to the *Wilson* case to claim that public factors are only weighed when private factors are "at or near equipoise" has long since been overruled by the 11th Circuit.  *See SME,* 382 F.3d at 1100 n.5 ("[w]e have clarified that although 'private factors are generally considered more important' than public ones, courts should consider both … 'in all cases'") (citing *Leon,* 251 F.3d at 1311).

[13] Plaintiff's attempt (Opp. at 21) to distinguish this case because both parties there were from the *same* foreign country fails. The relevant issue is that the court *specifically* rejected plaintiff's claims that the U.S. has a strong interest in enforcing U.S. copyrights against a non-U.S. defendant for alleged infringement of registrations owned by a non-U.S. party.  (*See* FNC Br. at 16.)  Furthermore, Plaintiff's parenthetical citation mischaracterizes the court's statement in *Jose Armando Bermudez & Co. v. Bermudez Int'l*, 2000 WL 1225792 (S.D.N.Y. 2000).  The court does not note the "'strong interest' of US courts in enforcing US copyrights of foreign plaintiff[s]" (Opp. at 18); rather it states that "U.S. courts … have a strong interest in enforcing the nation's copyright laws, as those laws are designed to protect authors creating works *in this country* and, indirectly, the consuming public."  *Id.* at *5 (emphasis added).  Finally, it is not true that courts routinely deny *forum non conveniens* motions simply because the complaint alleges violations of U.S. copyright law.  (Opp. at 20.)  As the very cases cited by Plaintiff illustrate, allegation of U.S. copyright infringement is *not* dispositive, but simply one among many public interest factors to weigh.

protection of U.S. consumers weigh against dismissal based upon Plaintiff's allegation that only 20% of the Tube Sites' traffic is in the U.S.

Finally, an additional public consideration militating against this Court accepting jurisdiction is that Ventura is a serial plaintiff, yet, at the same time, has acted to vigorously protect itself from the reach of U.S. courts based on arguments that it could not have foreseen being haled into court here.  (*See* Dkt. 25-1 at 2-4; *Kertesz*, *supra*.)  That copyright infringement was not at issue in *Kertesz*, as Plaintiff argues (Opp. at 21-22), is of no moment.  The relevant fact is that in an affidavit submitted by Ms. Vivas, Ventura argued that claims against it relating to its purchase of a copyrighted adult entertainment video should not stand in this Circuit because it and its affiliate were incorporated abroad and did not have offices or employees here.  Ms. Vivas now claims that all documents and witnesses with respect to exploitation, ownership and registration of Ventura's copyrights are in the U.S.  (Dkt. 31-8, ¶ 11.)  Ventura wants to have its cake and eat it too, and this Court should not allow it to do so.

## CONCLUSION

For all of the foregoing reasons, in the event that the Court refuses to grant Defendants' Personal Jurisdiction Motion, it should dismiss this case on grounds of *forum non conveniens*.

Dated: February 21, 2013

                                              KELLEY DRYE & WARREN LLP

                                              */s/ Andrea L. Calvaruso*
                                              **ANDREA L. CALVARUSO**
                                              Admitted *Pro Hac Vice*
                                              **TARANEH J. MARCIANO**
                                              Admitted *Pro Hac Vice*
                                              Email: acalvaruso@kelleydrye.com
                                              Email: tmarciano@kelleydrye.com
                                              101 Park Avenue
                                              New York, NY 10178
                                              Phone: 212-808-7800
                                              Fax: 212-808-7897

                                                       - and -

                                              ROGERS & HARDIN LLP
                                              **PHILLIP S. MCKINNEY**
                                              Georgia State Bar No. 495725
                                              **RICHARD H. SINKFIELD**
                                              Georgia State Bar No. 649100
                                              **JOSHUA P. GUNNEMANN**
                                              Georgia Bar No. 152250
                                              Email: pmckinney@rh-law.com
                                              Email: rsinkfield@rh-law.com
                                              Email: jgunnemann@rh-law.com
                                              229 Peachtree Street NE
                                              2700 International Tower
                                              Atlanta, GA 30303
                                              Phone: 404-522-4700
                                              Fax: 404-525-2224

                                              *Attorneys for Defendants UGC Internet Ventures, Ltd. and Sobonito Investments, Ltd.*